IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NHAT QUANG LE,<br><br>　　　　　Defendant. | No.  4:23-cr-00014-SHL-HCA<br><br>**ORDER DENYING MOTION TO<br>DISMISS COUNTS 2 AND 3** |

　　　　In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court held that firearms restrictions are constitutional only if they are "consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. 2111, 2126 (2022). Defendant Nhat Quang Le argues that 18 U.S.C. § 922(g)(3), which criminalizes the possession of firearms by a person "who is an unlawful user of or addicted to any controlled substances," does not satisfy *Bruen*. The Court concludes that it is bound by Eighth Circuit precedent upholding the facial constitutionality of § 922(g)(3) and therefore DENIES Le's Motion to Dismiss.

**I.　Background**

　　　　On January 19, 2023, a grand jury in the Southern District of Iowa returned a three-count Indictment charging Le with one count of Possession with Intent to Distribute a Controlled Substance (Count 1) and two counts of Unlawful User in Possession of a Firearm (Counts 2 and 3). (ECF 17.) Counts 2 and 3 allege that Le possessed a firearm at a time when he "knew he was an unlawful user of, or addicted to, a controlled substance." (Id., p. 2.) Le moves to dismiss Counts 2 and 3, arguing there is no "historical tradition" of prohibiting unlawful drug users from possessing firearms. (ECF 31.) He therefore argues that 18 U.S.C. § 922(g)(3) is facially unconstitutional in violation of the Second Amendment.

**II.　Legal Analysis**

　　　*A.　Bruen's Legal Framework for Analyzing the Constitutionality of Firearm Laws and Regulations.*

　　　　In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment protects the right of "law-abiding, responsible citizens" to possess firearms for self-defense. 554

U.S. 570, 635 (2008). In the years that followed, most federal courts of appeal began adopting and applying some form or another of means-end scrutiny to determine whether firearm laws were constitutional. *See, e.g.*, *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012). This generally entailed a two-step approach in which the courts would, <u>first</u>, determine whether the regulated conduct fell within the scope of the Second Amendment right from a historical perspective, and, if so, <u>second</u>, whether the challenged regulation satisfied some level of constitutional scrutiny (either intermediate or strict, depending on the circumstances). *See, e.g.*, *Focia*, 869 F.3d at 1285.

*Bruen* held that this two-step approach "is one step too many." 142 S. Ct. at 2127. "Step one . . . is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id.* "But *Heller* and *McDonald* [*v. City of Chicago*, 561 U.S. 742 (2010)] do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.*

The Eighth Circuit appears not to have adopted the sort of means-end scrutiny the Supreme Court held to be improper in *Bruen*. Instead, when the Eighth Circuit considered constitutional challenges to firearms restrictions post-*Heller*, it sometimes started with the standard set forth in *United States v. Salerno*, 481 U.S. 739, 745 (1987), for evaluating a statute's facial constitutionality. *See, e.g.*, *United States v. Seay*, 620 F.3d 919, 922 (8th Cir. 2010). Under this standard, the defendant "must establish that no set of circumstances exists under which [the statute] would be valid." *Id.* (quoting *Salerno*, 481 U.S. at 745). If the defendant could not satisfy this standard, the facial challenge failed and the Eighth Circuit turned to a two-prong approach for evaluating the as-applied challenge (if one was made): "[the defendant] must establish (1) that the Second Amendment protects his particular conduct, and (2) that his prior [] conviction is insufficient to justify the challenged regulation of Second Amendment rights." *United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019).

In at least one respect, *Bruen* may have abrogated Eighth Circuit precedent. *United States v. Adams* placed the burden on the defendant to prove the Second Amendment protected his conduct, whereas *Bruen* places the burden of proof on the Government to show historical evidence supporting the regulation in question. 142 S. Ct. at 2127. Beyond the placement of the burden of proof, however, there is nothing in *Bruen* that expressly abrogates cases like *Adams* and *United*

2

*States v. Seay*. For example, although *Bruen* eschewed "two-step" tests insofar as the second step engages in means-end scrutiny of a firearm regulation, there are nonetheless still two parts to the *Bruen* analysis: <u>first</u>, courts must determine whether "the Second Amendment's plain text covers an individual's conduct," and, if so, <u>second</u>, the Government must provide historical evidence to show the regulation is sufficiently analogous to Founding-era restrictions. 142 S. Ct. at 2129–30. Apart from who bears the burden of proof, this is similar to the two-part test used by the Eighth Circuit in *Adams*. In fact, in a very recent case, the Eighth Circuit essentially held that the two-step *Bruen* test is functionally the same as the two-step test from *Adams*, and thus prior cases that ruled in the Government's favor at step one remain good law. *See United States v. Sitladeen*, --- F.4th ----, 2023 WL 2765015, at *4–5 (8th Cir. Apr. 4, 2023).

With this background in mind, the Court will address Le's facial constitutional challenge to 18 U.S.C. § 922(g)(3).

> B.  Pre-*Bruen* Precedent from the Eighth Circuit Upholding the Constitutionality of Section 922(g)(3) Remains Good Law.

In *Seay*, the Eighth Circuit squarely rejected a facial constitutional challenge to § 922(g)(3). 620 F.3d at 925. *Seay* identified many cases in which the constitutionality of § 922(g)(3) had been upheld, but none in which it was struck down. *See id*. The Eighth Circuit concluded:

> Nothing in Seay's argument convinces us that we should depart company from *every* other court to examine § 922(g)(3) following *Heller*. Further, § 922(g)(3) has the same historical pedigree as other portions of § 922(g) which are repeatedly upheld by numerous courts since *Heller*. *See* Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213. Moreover, in passing § 922(g)(3), Congress expressed its intention to "keep firearms out of the possession of drug abusers, a dangerous class of individuals." *United States v. Cheeseman*, 600 F.3d 270, 280 (3d Cir. 2010), *pet. for cert. filed*, 78 U.S.L.W. 3731 (U.S. June 1, 2010) (No. 09-1470). As such, we find that § 922(g)(3) is the type of 'longstanding prohibition[] on the possession of firearms' that *Heller* declared presumptively lawful. *See* 128 S. Ct. at 2816–17. Accordingly, we reject Seay's facial challenge to § 922(g)(1).

*Id*. If *Seay* remains good law, this Court of course must follow it by denying Le's Motion to Dismiss. *See, e.g.*, *Dean v. Searcey*, 893 F.3d 504, 511 (8th Cir. 2018).

Except for comparing the pedigree of § 922(g)(3) to other firearms restrictions in the Gun Control Act of 1968, *Seay* did not expressly engage in the sort of historical analysis that *Bruen* requires. There was, for example, no discussion in *Seay* of Founding-era firearms restrictions to determine whether § 922(g)(3) is "analogous enough to pass constitutional muster." *Bruen*, 142 S.

Ct. at 2133. This contrasts *Seay* from other pre-*Bruen* cases in the Eighth Circuit involving challenges to other provisions of § 922(g). In *United States v. Bena*, for example, the Court carefully analyzed the "pre-existing right to bear arms" as it would have been understood in the Founding era before rejecting a constitutional challenge to § 922(g)(8), which criminalizes firearm possession by persons subject to a court order of protection for domestic abuse. 664 F.3d 1180, 1183–84 (8th Cir. 2011); *see also United States v. Hammond*, --- F. Supp. 3d ----, 2023 WL 2319321, at *3 (S.D. Iowa Feb. 15, 2023) (concluding that *Bena* remains good law because it "essentially foreshadowed *Bruen* by focusing on text and history and declining to engage in means-end scrutiny").

All the same, nothing in *Bruen* expressly repudiates the holding of *Seay*. To the contrary, in a concurring opinion in *Bruen*, Justice Kavanaugh (joined by Chief Justice Roberts) reiterated the earlier admonitions of Justices Scalia (in *Heller*) and Alito (in *McDonald*) that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill. . ." *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring (quoting *Heller*, 554 U.S. at 626)). As *Seay* relied heavily on the same "longstanding prohibition" language in affirming the facial constitutionality of § 922(g)(3), *see* 620 F.3d at 925, it is difficult for this Court to conclude *Seay* is no longer good law. Instead, the proper course is to treat *Seay* as binding and "leav[e] to [the Eighth Circuit] the prerogative of overruling its own decisions." *United States v. Coonce*, 932 F.3d 623, 641 (8th Cir. 2019) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)); *see also United States v. Wendt*, --- F. Supp. 3d ----, 2023 WL 166461, at *5 (S.D. Iowa Jan. 11, 2023) (declining to interpret *Bruen* as having invalidated firearm restrictions under the Bail Reform Act absent "much clearer guidance from higher courts").

There are other compelling reasons to conclude that *Seay* remains binding precedent. <u>First</u>, although the Eighth Circuit did not analyze Founding-era firearms restrictions in *Seay*, it did so in *Bena*, concluding there was a "common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible." 664 F.3d at 1183. Then-Judge Barrett reached essentially the same conclusion in her dissenting opinion in a case while she was on the Seventh Circuit, stating that history "support[s] the proposition that the state can take the right to bear arms away from a category of people that it deems dangerous." *Kanter v. Barr*, 919 F.3d 437, 464 (7th Cir. 2019) (Barrett, J., dissenting). As *Seay* recognized that Congress considered drug abusers to

be a "dangerous class of individuals," 620 F.3d at 925 (quoting *Cheeseman*, 600 F.3d at 280), it dovetails with *Bena* in a manner consistent with *Bruen*. In other words, considered collectively, *Bena* and *Seay*: (a) analyzed Founding-era firearms restrictions; (b) concluded there is a historical tradition of restrictions on the possession of firearms by those deemed "dangerous"; and (c) concluded that users of illegal controlled substances are appropriately considered "dangerous." This is essentially what *Bruen* requires at the second step, and thus the Court must conclude that § 922(g)(3) "pass[es] constitutional muster" at that step. *Bruen*, 142 S. Ct. at 2133.

Second, there is an important structural difference between the firearms restrictions in § 922(g) and the regulations struck down by the Supreme Court in *Bruen*, *Heller*, and *McDonald*. In those three cases, the regulations "prohibited everyone from exercising their Second Amendment rights except, at most, in relatively narrow circumstances if a citizen could show special need. In other words, the regulation[s] started from the premise that no one could possess firearms for self-defense before making exceptions." *Hammond*, 2023 WL 2319321, at *4. "Section 922(g) works in the opposite direction. It starts from the premise that everyone has the right to possess firearms, but then takes that right away from certain categories of people." *Id.* In the post-*Heller* era, the Supreme Court has never evaluated—much less struck down—any gun restrictions with a structure like § 922(g), and thus there are open questions about how lower courts should go about evaluating them.

One of the biggest of those open questions is how to handle situations where some applications of the restriction appear to comport with Founding-era historical traditions while others arguably do not. Consider, for example, the Supreme Court's repeated suggestion that there is an appropriate historical analog for firearms restrictions on the "mentally ill." *See Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring); *Heller*, 554 U.S. at 626. Drug addiction is arguably a form of mental illness. *See, e.g.*, *United States v. Mosley*, 277 F. Supp. 3d 1294, 1298 (M.D. Ala. 2017) ("As the National Institute on Drug Abuse explains, drug abuse is a mental illness 'because addiction changes the brain in fundamental ways, disturbing a person's normal hierarchy of needs and desires and substituting new priorities connected with procuring and using the drug.'" (quoting Nat'l Inst. On Drug Abuse, *Is Drug Addiction a Mental Illness?*)).[1] And even if it isn't, drug

---

[1] *See* https://www.drugabuse.gov/publications/research-reports/comorbidity-addiction-other-mental-illnesses/drug-addiction-mental-illness (last visited Sept. 22, 2017).

addiction and mental illness are closely related because "habitual drug users, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms." *United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010). It therefore stands to reason that historical restrictions on firearm possession by the mentally ill, although perhaps not a "dead ringer" for modern-day restrictions on drug addicts, are nonetheless "analogous enough to pass constitutional muster." *Bruen*, 142 S. Ct. at 2133. The historical analogy may not be as strong, however, in connection with a mere "unlawful user" of a controlled substance, particularly if the drug is relatively undangerous and there is no evidence of addiction or active intoxication at the time the firearm was possessed.

*Bruen* does not provide clear guidance on how to approach this situation. It did not, for example, purport to repudiate the *Salerno* standard for facial constitutional challenges; i.e., that the challenger must establish "that no set of circumstances exists under which the Act would be valid." 481 U.S. at 745. In fact, *Bruen* never even specified whether it involved a "facial" or "as-applied" challenge, although the Court believes it is properly understood as the former. Even so, *Bruen* simply means there is "no set of circumstances" in which a licensing regime will be valid if it requires an applicant to prove a "special need" to possess a firearm beyond mere self-defense. 142 S. Ct. at 2138. Beyond this, the Court does not interpret *Bruen* as abrogating cases like *Seay* that apply *Salerno*'s no-set-of-circumstances standard. *See Seay*, 620 F.3d at 922. It follows that Le's facial constitutional challenge fails because there are, at minimum, <u>some</u> circumstances in which § 922(g)(3) is valid. *See id.*

<u>Third</u>, and relatedly, another open question in the aftermath of *Bruen* is whether the words "the people" in the Second Amendment refer to all citizens, or just some subset—and whether it even matters. *See generally Hammond*, 2023 WL 2319321, at *5–6. The question arises because *Heller* repeatedly used the phrase "law-abiding citizens" when describing the Second Amendment's scope. *Heller*'s repeated use of that phrase, when viewed in conjunction with its admonition that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . .," 554 U.S. at 626, led some judges to conclude that non-law-abiding citizens are not part of "the people" for whom the right to bear arms is protected by the Second Amendment. *See, e.g.*, *Binderup v. Att'y Gen.*, 836 F.3d 336, 367 (3d Cir. 2016) (Hardiman, J., concurring).

*Bruen* gave the issue new life by again using the words "law-abiding citizens" repeatedly when discussing the scope of the Second Amendment's protections. 142 S. Ct. at 2122, 2125, 2131, 2133, 2134, 2135 n.8, 2138, 2138 n.9, 2150, 2156. In subsequent cases, most courts have assumed that the first step of the *Bruen* analysis—i.e., whether "the Second Amendment's plain text covers an individual's conduct," *id.* at 2129–30—revolves largely around what "the people" means as used in the Second Amendment. Here, the Government argues that people who use or are addicted to illegal controlled substances are non-law-abiding and therefore do not have a constitutionally protected right to possess firearms.

Of the courts to have decided the issue directly, most appear to have concluded that "the people" in the Second Amendment refers to all citizens, and thus any citizen who possesses a firearm of a type in common use has satisfied *Bruen*'s first step. *See, e.g.*, *United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023) ("Rahimi, while hardly a model citizen, is nonetheless among 'the people' entitled to the Second Amendment's guarantees, all other things equal."); *United States v. Bernard*, No. 22-CR-03 CJW-MAR, 2022 WL 17416681, at *7 (N.D. Iowa Dec. 5, 2022); *United States v. Perez-Gallan*, 22-CR-00427, 2022 WL 16858516, at *8–9 (W.D. Tex. Nov. 10, 2022). Other courts have interpreted "the people" more narrowly to exclude non-law-abiding citizens. *See Range v. Att'y Gen.*, 53 F.4th 262, 284 (3d Cir. 2022) ("We believe the Supreme Court's repeated characterization of Second Amendment rights as belonging to 'law-abiding' citizens supports our conclusion that individuals convicted of felony-equivalent crimes, like Range, fall outside 'the people' entitled to keep and bear arms."), *reh'g en banc granted, opinion vacated sub nom. Range v. Att'y Gen.*, 56 F.4th 992 (3d Cir. 2023); *United States v. Coleman*, No. 3:22-CR-8-2, 2023 WL 122401, at *2 (N.D. W. Va. Jan. 6, 2023) ("The bottom line is the Defendant's status as a felon removes him from 'the people' enumerated in the Second Amendment.")

In *Hammond*, the undersigned suggested that *Bruen* might not have intended for the words "the people" to receive this kind of scrutiny. 2023 WL 2319321, at *5 ("It is difficult to address [what 'the people' means] without veering into semantics."). Instead, when analyzing whether the "Second Amendment's plain text covers an individual's conduct," *Hammond* suggested the proper question "is not what 'the people' means, but rather whether the 'right . . . to keep and bear Arms,' as understood in the Founding era, covers an individual's conduct when the person possesses a firearm after having been proven to be dangerous." *Id.* at *6 (relying on *Bena*, 664 F.3d at 1183).

In other words, the first *Bruen* stage requires a "more nuanced approach" than simply asking what "the people" means. *Id.*

In a very recent decision, the Eighth Circuit indicated the undersigned was right—sort of. In *Sitladeen*, 2023 WL 2765015, at *4–5, the Eighth Circuit essentially confirmed that courts in this Circuit must take a more nuanced approach to the first *Bruen* step that focuses on <u>conduct</u>: "*Bruen* does not command us to consider only 'conduct' in isolation and simply assume that a regulated person is part of 'the people.' To the contrary, *Bruen* tells us to begin with a threshold question: whether the person's conduct is 'covered by' the Second Amendment's 'plain text.'" *Id.* at *5. *Sitladeen* concluded that "the plain text of the Amendment does not cover *any* conduct by unlawfully present aliens" and thus rejected a facial constitutional challenge to § 922(g)(5). *See id.*

*Sitladeen* departed from *Hammond* in that it described the issue as involving "what is meant by the phrase, 'the people.'" *Id.* at *4. In that sense, *Hammond* did not have it quite right. But the larger point from *Sitladeen* is consistent with *Hammond*: the first step of the *Bruen* analysis is not perfunctory and must focus on conduct. *See id.* at *5. Applying that approach here, the Court could not strike down § 922(g)(3) on a facial challenge without concluding that every user of unlawful drugs—no matter how dangerous the drug or how severe the addiction—is engaged in constitutionally-protected conduct when he or she possesses a firearm. Nothing in *Bruen* compels such a conclusion, and Eighth Circuit precedent rejects it. This provides yet another reason why the Court must deny Le's motion to dismiss.

In sum, the Court concludes that *Seay* remains good law, which is reason enough to deny Le's facial constitutional challenge to § 922(g)(3). The Court further concludes that when *Seay* is considered in conjunction with *Bruen* and Eighth Circuit precedent (both pre- and post-*Bruen*), it compels the Court to conclude that Le's facial challenge to § 922(g)(3) fails at both the first and second steps of the *Bruen* analysis anyway.

**III.  Conclusion**

The Court DENIES Le's Motion to Dismiss Counts 2 and 3.

IT IS SO ORDERED.

Dated: April 11, 2023

                              STEPHEN H. LOCHER
                              U.S. DISTRICT JUDGE